Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BOY RACER, INC., | ) | **Case No. 11-CV-2329 PSG** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S *EX PARTE* APPLICATION** |
| v. | ) | **FOR LEAVE TO TAKE FURTHER** |
| | ) | **EXPEDITED DISCOVERY** |
| DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 5

PROCEDURAL HISTORY .............................................................................................. 5

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT ..................................................................................................................... 9

I.   RACER HAS GOOD CAUSE FOR TAKING DISCOVERY PRIOR TO THE RULE
     26(F) CONFERENCE BECAUSE IT NEEDS TO LEARN THE TRUE IDENTITY
     OF THE INFRINGER ............................................................................................... 9

II.  RACER'S PROPOSED SUBPOENAS ARE REASONABLY CALCULATED TO
     LEAD TO THE DISCOVERY OF THE INFRINGER'S IDENTITY AND
     MINIMIZE THE BURDEN PLACED ON FREEMAN ......................................... 13

     A.  Racer's Discovery Request Is Limited and Falls Well Within the Scope of
         Discovery Permitted Under the Federal Rules of Civil Procedure. .................... 13

     B.  Racer's Proposed Subpoenas Are Reasonably Calculated to Lead to the Discovery
         of the Infringer's Identity ................................................................................... 17

     C.  Racer's Proposed Subpoenas Do Not Impose Undue Burden or Expense on
         Freeman ............................................................................................................... 17

CONCLUSION ................................................................................................................ 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

Aff. in Supp. of Mots. to Dismiss, Mot. to Quash, & General Defenses, *First Time Videos, LLC v. Does 1–500*, No. 1:10-cv-06254 (N.D. Ill. Mar. 31, 2011), ECF No. 99 ................... 15

4

Aff. in Supp. of Mots. to Dismiss, Mot. to Quash, & General Defenses, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-01959 EMC (N.D. Cal. June 6, 2011), ECF No. 11 ................. 15

5

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 768 F. Supp. 2d 1040 (N.D. Cal. 2011) .................... 8, 9

6

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................................. 12

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 12

8

*Carnegie Mellon University v. Marvell Technology Group*, No. C11-80078, 2011 WL 2135103 (N.D. Cal. May 27, 2011) ......................................................................................... 9

9

*Columbia Ins. Co. v. SeesCandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ............................... 8, 10, 11

10

*Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992) ............................................................... 10

11

*Diabolic Video Productions, Inc. v. Does 1–2099*, No. 5:10-cv-05865-PSG (N.D. Cal. May 31, 2011), ECF No. 16 ......................................................................................... 6, 8, 11

12

*Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548 (7th Cir. 1996) ..................................... 10

13

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ....................................................... 9, 10, 11

*Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978) ............................................................... 10

14

*In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........................... 16

15

*IO Group, Inc. v. Does 1–65*, No. C 10–4377 SC, 2010 WL 4055667 (N.D. Cal. Oct. 15, 2010) ......................................................................................... 9

16

*Maclin v. Paulson*, 627 F.2d 83 (7th Cir. 1980) ............................................................... 10

17

Mot. to Quash Order Granting Pl.'s Application for Leave to Take Disc. Prior to Rule 26(f) Conference With Extended Joinder Discussion, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-01959 EMC (N.D. Cal. June 7, 2011), ECF No. 12 ................................................. 15

18

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ................................................. 8

19

*Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979) ............................................................... 10

20

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) ........................... 8

21

*United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364 (9th Cir. 1982)................. 18, 19

*United States v. Procter & Gamble*, 356 U.S. 677 (1958) ................................................. 10

22

*Viacom Intern., Inc. v. YouTube, Inc.*, No. C-08-8021, 2009 WL 102808 (N.D. Cal. Jan. 14, 2009) ......................................................................................... 14

23

*VPR Internationale v. Does 1–1017*, No. 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr. 29, 2011), ECF No. 15 ......................................................................................... 11

24

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) ................................................. 10, 11

25

**Other Authorities**

26

Fed. R. Civ. P. 45 advisory comm. notes (2006 amend.) ................................................. 14

27

28

Rothstein et al., *Managing Discovery of Electronic Information: A Pocket Guide for Judges*, Federal Judicial Center (2007) ........................................................................................... 14

Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas, 9 SEDCJ 197 (Fall 2008) ...................................................................................................... 14, 16

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 19

Fed. R. Civ. P. 16 ............................................................................................................. 7

Fed. R. Civ. P. 26 .................................................................................................... 7, 8, 19

Fed. R. Civ. P. 45 ............................................................................................. 9, 17, 18, 19

Fed. R. Civ. P. 45(3)(A) ................................................................................................. 19

Fed. R. Evid. 401 .............................................................................................................. 8

**INTRODUCTION**

Boy Racer, Inc. ("Racer") was granted leave by this Court to conduct limited *ex parte* discovery that would enable Racer to identify and serve the defendant, previously known to Racer only by his Internet Protocol ("IP") address. Verizon Online, LLC ("Verizon"), has since identified Mr. Lance Freeman as the account holder associated with the IP address from which Racer's copyrighted video was distributed. Because—as this Court noted—the relationship between an account holder and an infringer can be imperfect, Racer now seeks leave to conduct what it expects to be a final stage of limited *ex parte* discovery into the true identity of the infringer.

Specifically, Racer asks this Court to authorize service of three subpoenas directed to Freeman: one for Freeman's deposition, one for inspection of Freeman's premises, and one for production of electronically stored information ("ESI") from Freeman's digital devices. Racer first needs to depose Freeman because Freeman is connected to the infringing activity as the account holder. Even if Freeman did not distribute the videos himself, the infringing activity occurred over his network and equipment he controls. Thus, Freeman is the only person with information that can allow Racer to identify the actual infringer and permit service of process. Deposing Freeman under oath is an obvious and cost-effective path to discovery of the infringer's identity or relevant information that may lead to eventual discovery of that identity. Yet, because Freeman's deposition may not provide all the answers necessary to identify the infringer, Racer seeks leave to serve two additional subpoenas on Freeman: one compelling Freeman to permit an inspection of his premises and the other compelling production of relevant ESI.

Racer's proposed step-by-step approach to discovery in this motion avoids placing an undue burden on Freeman, since only the first step of deposing Freeman may ultimately be necessary. Rather than bringing three separate motions with the same underlying facts to be decided under the same legal standard, in the interests of judicial economy Racer asks this Court to grant the attached proposed order which delineates the steps necessary for Racer to depose Freeman, inspect Freeman's premises, and obtain copies of Freeman's ESI. The Court should grant this order because Racer

needs to learn the true identity of the infringer and because these subpoenas are reasonably calculated to lead to the discovery of the infringer's identity.

**PROCEDURAL HISTORY**

Racer filed this lawsuit for copyright infringement against 52 "Doe" Defendants identified only by their IP addresses. (ECF No. 1.) Racer asked, and was granted, leave by this Court to take discovery prior to Rule 26(f) conference, although only as to Doe 1. (ECF No. 8.) The Court explained its decision at that time by reference to a "near identical motion," in which the Court wrote that although "the relationship between accused activity linked to an IP address is imperfect at best, this imperfection does not make it 'clear,' as [the Ninth] Circuit requires [for denial of early discovery], that the discovery sought would fail in uncovering the identity of individuals responsible for that activity." *Id.*; *Diabolic Video Productions, Inc. v. Does 1–2099*, No. 5:10-cv-05865-PSG, at 5 (N.D. Cal. May 31, 2011), ECF No. 16.

As authorized by the Court, Racer served a subpoena on Verizon Online, LLC, seeking identity of the account holder associated with the IP address 173.67.109.59 on April 28, 2011 at 7:57:42 UTC. (Ex. A.) Verizon produced the requested information and identified Lance Freeman as the account holder. (Ex. B.)

Between August 18, 2011 and August 30, 2011, counsel for Racer attempted to contact Freeman for purposes including offering terms of settlement and notifying him that he must preserve all evidence reasonably under his control relating to this case, including computer-based ESI. (*See* Decl. of Brett L. Gibbs ¶¶ 3–11, Aug. 30, 2011, ECF No. 14-1.) Attempts at contact with Freeman were made through various methods and with varying degrees success as part of Racer's preparation for the Joint Case Management Conference scheduled by the Court. (*See id.*) Freeman was uncooperative and at one point threatened to destroy his computer. (*Id.* ¶¶ 10–11.)

On August 30, 2011, Racer filed a Case Management Conference Statement in which it described the reasons why its initial limited discovery had failed to identify the Defendant in this action such that the Defendant could be served with process, and described the further discovery that would be required to accomplish this given the non-cooperation of Freeman and the limited known

attributes of his specific living and network arrangements. (*See* Pl.'s Case Management Conf. Statement, Aug. 30, 2011, ECF No. 14.)

The Court expressed its displeasure with Racer's statements in an Order Denying Further Discovery and Order to Show Cause. (Sept. 19, 2011, ECF No. 17.) While recognizing that "[t]here are, of course, no guarantees that discovery will lead to evidence as expected," the Court found Racer's anticipated need for further discovery to be "plainly inconsistent" with Racer's prior representations. (*Id.* at 4:18–19, 5:13–14.) Although Racer had not yet filed a request for additional discovery, the Court nevertheless found that Racer "offers nothing to justify the almost unbounded scope of its request for additional discovery other than the inadequacy of the discovery it has taken already." (*Id.* at 5:18–19.) The Court then withdrew its May 31, 2011 Order granting limited early discovery and preemptively denied "any pending or proposed requests for further discovery." (*Id.* at 5:22.)

Racer now asks the Court for leave to take further discovery from Freeman for the limited purpose of identifying the Doe Defendant in this action. Although the Court has indicated that will deny this motion, Racer wishes to document the actual scope of its request, to provide the Court with the applicable legal standard governing requests for early discovery, and to fortify the record for any potential appeals of such a denial. Racer therefore respectfully submits this *ex parte* application for further expedited discovery.

## LEGAL STANDARD

The legal standard for Racer's motion is governed by: (1) this Court's broad authority to manage the discovery process under Fed. R. Civ. P. 26(f); (2) the identical procedural limitations placed on both *ex parte* and regular discovery by the Federal Rules of Civil Procedure; and (3) the procedural requirements under Fed. R. Civ. P. 45 for compelling the appearance of a non-party for purposes of taking the non-party's deposition, obtaining production of the non-party's documents and electronic information, and permitting inspection of the non-party's premises.

First, the Court has broad authority under the Federal Rules of Civil Procedure to manage the discovery process. *See, e.g.*, Fed. R. Civ. P. 26(d); *id.* 16(b)(3)(B); *id.* 16(c)(2)(F). Rule 26(d)(1)

1    explicitly permits a party to seek discovery from any source before the parties have conferred when

2    authorized by a court order. *Id.* 26(d)(1). Courts within the Ninth Circuit generally use the "good

3    cause" standard to determine when discovery prior to a Rule 26(f) conference should be permitted.

4    *Apple Inc. v. Samsung Electronics Co., Ltd.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011) (citing

5    *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)). Under the

6    "good cause" standard, "[g]ood cause may be found where the need for expedited discovery, in

7    consideration of the administration of justice, outweighs the prejudice to the responding party."

8    *Semitool*, 208 F.R.D. at 276. This Court has previously found that good cause existed for limited *ex*

9    *parte* discovery when it was necessary for "the plaintiff to learn the identifying facts necessary to

10   permit service on the defendant." *Diabolic Video Productions, Inc. v. Does 1–2099*, No. 5:10-cv-

11   05865-PSG, at 1 (N.D. Cal. May 31, 2011), ECF No. 16 (quoting *Columbia Ins. Co. v.*

12   *SeesCandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999)).

13       The scope and limitations are the same for the *ex parte* discovery as they are for the regular

14   discovery and are set forth by the Federal Rules of Civil Procedure and Evidence. In relevant part,

15   Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged

16   matter that is relevant to any party's claim or defense—including the existence, description, nature,

17   custody, condition, and location of any documents or other tangible things and the identity and

18   location of persons who know of any discoverable matter." Rule 26(b)(1) further provides that "the

19   court may order discovery of any matter relevant to the subject matter involved in the action.

20   Relevant information need not be admissible at the trial if the discovery appears reasonably

21   calculated to lead to the discovery of admissible evidence." Relevant evidence is defined under Fed.

22   R. Evid. 401 as "evidence having any tendency to make the existence of any fact that is of

23   consequence to the determination of the action more probable or less probable than it would be

24   without the evidence." Relevancy to a subject matter is further interpreted "broadly to encompass

25   any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

26   that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

27

28

1    Finally, subject to the standards described above, Fed. R. Civ. P. 45 sets forth the procedure

2  for compelling the appearance of a non-party for purposes of taking the non-party's deposition,

3  obtaining production of the non-party's documents and electronic information, and permitting

4  inspection of the non-party's premises. Fed. R. Civ. P. 45; *see also Carnegie Mellon University v.*

5  *Marvell Technology Group*, No. C11-80078, 2011 WL 2135103, at *1 (N.D. Cal. May 27, 2011)

6  (discussing scope of discovery of the Rule 45 subpoena).

7                                               **ARGUMENT**

8    The Court should grant Racer's request for a final stage of limited *ex parte* discovery and

9  authorize Racer to serve subpoenas on Freeman because Racer needs to learn the identifying facts

10  necessary to permit service on the defendant. Racer's subpoenas are clearly reasonably calculated to

11  lead to the discovery of that information. This process will be carried out in a manner that avoids

12  placing undue burden or expense on Freeman. First, in deposing Freeman, Racer will pay Freeman

13  both the attendance fees and mileage costs required under Fed. R. Civ. P. 45(b)(1). Second, Racer

14  will serve only one subpoena at a time, thus allowing Freeman a reasonable amount of time to

15  comply with each subpoena and resolve the issues raised therein. Third and finally, Racer will cover

16  the majority of ESI production costs if that stage of discovery proves warranted.

17  **I.    RACER HAS GOOD CAUSE FOR TAKING DISCOVERY PRIOR TO THE RULE
18          26(F) CONFERENCE BECAUSE IT NEEDS TO LEARN THE TRUE IDENTITY OF
          THE INFRINGER**

19    Courts within the Ninth Circuit generally consider whether a plaintiff has shown "good

20  cause" for early discovery prior to a Rule 26(f) conference. *See, e.g.*, *Apple Inc.*, 768 F. Supp. 2d

21  1040 at 1044; *IO Group, Inc. v. Does 1–65*, No. C 10–4377 SC, 2010 WL 4055667, at *2 (N.D. Cal.

22  Oct. 15, 2010). When the identities of defendants are not known before the complaint is filed, a

23  plaintiff "should be given an opportunity through discovery to identify the unknown defendants

24  unless it is clear that discovery would not uncover the identities, or that the complaint would be

25  dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). In evaluating

26  whether a plaintiff has good cause to learn the identity of an unknown defendant through early

27  discovery, courts examine whether plaintiff: (1) has identified the Doe defendants with sufficient

28

specificity that the court can determine that the defendants are real people who can be sued in federal court; (2) has recounted the steps it has taken to locate and identify the defendant; and (3) has demonstrated that the action can withstand a motion to dismiss. *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999).

Additionally, courts in the Ninth Circuit have generally recognized a duty on their part to assist plaintiffs in their quest for defendant's true identities. *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of the alleged defendants [is] not [ ] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants.")). In fact, federal courts across the country routinely and virtually universally allow *ex parte* discovery to identify unknown defendants. *See, e.g.*, *Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996) ("To the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation."); *see also id.* at 555 n.3 (collecting cases); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (finding error in district court's denial of a plaintiff's motion to join an unknown defendant where identity of the defendant could have been determined through discovery); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (reversing and remanding because when "a party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery") (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978)). This is because the very purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958).

Racer already demonstrated, and this Court agreed, that Racer has "good cause" for conducting *ex parte* discovery prior to the Rule 26(f) conference in its May 31 Order. (ECF No. 8.) Racer specifically addressed the *Seescandy* factors in its Application for Ex Parte Discovery filed on

April 12, 2011. (ECF No. 6.) The circumstances of this case have not changed substantially since that time, and Racer's request here still satisfies the "good cause" standards articulated in *Seescandy*.

First, there is no doubt that someone hiding behind the IP address engaged in unauthorized distribution of the videos and if Racer is permitted to conduct a final stage of limited *ex parte* discovery, this person can be identified, named, and served with process. To this end, instead of blindly naming Freeman as a defendant,[1] Racer now seeks further discovery to gather evidentiary support for its contentions. This Court should thus follow the well-established precedent of the Ninth Circuit and allow Racer to continue its limited discovery aimed at establishing the true identity of an unknown defendant. *See Wakefield*, 177 F.3d at 1163; *Gillespie*, 629 F.2d at 642.

Second, Racer has exhausted all other discovery options in attempting to identify the infringer. Racer has learned from Verizon's answer to Racer's prior subpoena that Freeman is the account holder who either personally engaged in the unauthorized distribution of Racer's copyrighted videos or was in control of the network and equipment used to distribute the videos. (Ex. B.) But as this Court has itself pointed out, "the relationship between accused activity linked to an IP address and subscriber information associated with that IP address is imperfect at best." *Diabolic Video Productions, Inc.*, No. 5:10-cv-05865-PSG, at 5 (quoting *VPR Internationale v. Does 1–1017*, No. 2:11-cv-02068-HAB-DGB, at 2 (C.D. Ill. Apr. 29, 2011), ECF No. 15). Racer has also attempted to communicate with Freeman, who has obstructed any inquiry into this matter.

---

[1] For the record, Racer states the distinction between an account holder and an infringer. An account holder is a person who entered into an Internet service agreement with an ISP. When persons commit infringement over the Internet, the infringing activity can be traced to an IP address—which is simply a number that is assigned to devices, such as computers, that are connected to the Internet. Armed with an IP address and the date and time of infringing activity, a copyright holder can determine the identity of the account holder associated with the IP address by issuing a subpoena to the ISP that owns the IP address. While it is not uncommon for an account holder to also be an infringer, it is also possible for the account holder and the infringer to be separate persons. A classic example of the latter scenario is where an entity business is the account holder and the individual infringer is one of its many employees. On the flip side, in other cases, Racer is often able to gather enough information from the combination of an ISP subpoena return and initial subscriber communications to form a reasonable basis for concluding that the subscriber and infringer are one and the same. In these scenarios, merely gaining identifying information from an ISP is sufficient to name an otherwise anonymous Doe Defendant.  Many of these cases never reach trial, and fly under the radar, though, because those Doe Defendants decide to settle instead of pushing these cases further through the court system.

However, in some cases, such as here, Plaintiff's initial discovery efforts turn out to be insufficient and a final stage of limited discovery is required. In any event, though, the initial ISP subpoena obviously substantially advances Racer's ultimate ability to ascertain whom to name and serve with process. Only when it becomes apparent that additional discovery is required does Racer make this type of request. Without the limited discovery requested in Racer's motion, Racer will be unable to name and serve the infringer with process.

Accordingly, Racer must conduct a final stage of limited *ex parte* discovery to determine who should be named as a defendant. Without further discovery from Freeman, Racer cannot be certain if Freeman is the defendant who should be named and served with process, or merely a sole material witness in possession and control of relevant information that is necessary to prove Racer's claim of copyright infringement. Moreover, the information that Racer seeks from Freeman is not duplicative or available from any other source at this time. Discovery from Freeman is the only way Racer can discover the true identity of the person who has infringed its copyrights.

Third, Racer has alleged sufficient information in its complaint and accompanying documents to survive a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Racer has alleged that it owns copyrights at issue in this case and that people associated with the IP addresses listed in the attachments to the Complaint have engaged in unauthorized distribution of Racer's copyrighted works. (*See* Compl.) Taken as true—as required on a motion to dismiss—these allegations are sufficient to establish a *prima facie* case of copyright infringement.

Because an unknown defendant hiding behind an IP address is a real person who can be sued in federal court, because Racer has exhausted all other possible avenues of discovery, and because Racer's suit can withstand a motion to dismiss, Racer has demonstrated "good cause" for expedited discovery. This Court should therefore grant Racer's request to continue limited *ex parte* discovery to learn the identity of the actual infringer in this case. Issuing Rule 45 subpoenas directed at Freeman is the next logical and proper step in this litigation because deposing Freeman, inspecting his premises, and collecting ESI from his digital devices is reasonably calculated to discover the true identity of the infringer.

1

2

## II.    RACER'S PROPOSED SUBPOENAS ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF THE INFRINGER'S IDENTITY AND MINIMIZE THE BURDEN PLACED ON FREEMAN

3

4

5

6

7

8

9

10

11

12

13

Racer seeks to depose Freeman, inspect his premises, and ESI from his digital devices. This request is reasonable under the circumstances because: (1) such discovery is limited and falls well within the scope of discovery permitted under the Federal Rules of Civil Procedure; and (2) such discovery is reasonably calculated to yield identity of the party who has infringed Racer's copyrights (who then can be named and served with process). In the interests of judicial economy, Racer asks this Court to authorize subpoenas for all three discovery devices permitted under Fed. R. Civ. P. 45—deposition, inspection of the premises, and production of ESI—in a single order that is substantially similar to the proposed order attached to this motion. Absent an order that provides Freeman with effective notice of Racer's suit and thereby imposes on Freeman a corresponding obligation to preserve relevant evidence, Racer may suffer irreparable harm should Freeman delete data from his computers or alter the layout of his network.

14

15

16

17

18

Mindful of Freeman's third party status, Racer will conduct discovery stemming from this motion in a manner that avoids placing an undue burden on Freeman: Racer will start with a simple deposition and progress to inspection of Freeman's premises and a demand for Freeman to produce his ESI only if necessary. Racer will also bear most of the discovery costs involved, paying Freeman for his attendance and mileage fees, and paying for forensic examination of Freeman's computer.

19

20

### A.    Racer's Discovery Request Is Limited and Falls Well Within the Scope of Discovery Permitted Under the Federal Rules of Civil Procedure.

21

22

This Court should grant Racer's request because it is limited only to a narrow segment of the otherwise broad scope of discovery permitted under the Federal Rules of Civil Procedure.

23

24

25

26

27

Discovery of ESI from third parties is a common practice explicitly allowed by the Rules of Civil Procedure and routinely endorsed by federal courts. Fed. R. Civ. P. 45, which governs discovery from third parties, was amended in 2006 to explicitly recognize the common practice of making requests for and production of ESI from non-parties. *See* Fed. R. Civ. P. 45 advisory comm. notes (2006 amend.); *see also* Sedona Conference Commentary on Non-Party Production & Rule 45

28

1   Subpoenas, 9 SEDCJ 197, 198 (Fall 2008) ("[P]ractice prior to the 2006 amendments involved

2   requests for and production of ESI from non-parties in connection with Rule 45 subpoenas, just as

3   did discovery between parties. The change brought about by the amendment to Rule 45 was to

4   recognize this practice explicitly.") Judges themselves acknowledge that requests for ESI from third

5   parties are more common than requests for paper documents. *See* Rothstein et al., *Managing*

6   *Discovery of Electronic Information: A Pocket Guide for Judges*, Federal Judicial Center (2007), at

7   12.

8       This Court recently applied Rule 45 to allow extensive ESI discovery from a third party in

9   *Viacom Intern., Inc. v. YouTube, Inc.*, No. C-08-8021, 2009 WL 102808 (N.D. Cal. Jan. 14, 2009).

10  *Viacom* involved three major players: (1) Viacom and related entities, that were the copyright

11  holders of various videos; (2) YouTube, an online video hosting service that enabled its users to

12  share videos online, including some of Viacom's copyrighted videos; and (3) BayTSP, a copyright

13  monitoring company, hired by Viacom to scour YouTube for postings of copyrighted material. *Id.* at

14  *1–*2. When Viacom sued YouTube for copyright infringement because BayTSP's crawler software

15  uncovered over one hundred thousand video clips on YouTube's website that contained material

16  previously copyrighted by Viacom, YouTube served BayTSP with a third party subpoena *duces*

17  *tecum* to obtain production of documents stored electronically on BayTSP's computers. *Id.* at *2.

18  BayTSP objected, complaining that the scope of the subpoena was overly broad, encompassing over

19  four terabytes of data, and yielding over a million documents that totaled over 6 million pages—all

20  of which would have to be reviewed by BayTSP for privilege and confidentiality. *Id.* at *5.

21  Nevertheless, this Court ordered BayTSP to comply with the subpoena, concluding the documents

22  were relevant and that BayTSP had failed to establish the subpoena imposed an undue burden on it

23  since YouTube had agreed to compensate BayTSP for the costs of the requested ESI production. *Id.*

24  at *4–*7.

25      By comparison, Racer's ESI discovery request does not even begin to approach the

26  magnitude of YouTube's request from BayTSP. Racer's request is much more limited in nature,

27  seeking only to image the hard drives of those digital devices retained by Lance Freeman that are

28

capable of establishing an Internet connection—images that Racer can then examine for evidence of unauthorized distribution of Racer's videos. Because this evidence can take many different forms, unlike a typical request for document production, Racer cannot further narrow the scope of this ESI production request. But as set forth below, Racer is bearing the majority of the cost of this examination and aims to conduct it in the least disruptive manner possible. Finally, without this evidence, Racer can neither proceed with its case nor ultimately prove its claims.

As for Racer's request for a subpoena to inspect Freeman's premises, it must be recognized that certain kinds of evidence critical to Racer's ability to identify the actual infringer of its copyrights can be gathered only through such an inspection. In particular, a qualified computer technician must be allowed to determine the precise type of physical network connection in use at Freeman's premises, assess and diagram the physical layout of Freeman's network, inventory Freeman's digital devices, and survey any wireless networks and devices. Racer needs this information because a defense asserted by virtually every person accused of distributing videos online is the presence of an unsecured wireless router at the person's premises.[2] Consequently, it is only by inspecting Freeman's actual network layout that Racer may determine if Freeman's connection or the network is actually set up in a fashion that would allow others to connect to it without Freeman's consent. In addition, an inspection and inventory of all digital devices on Freeman's premises that are capable of connecting to the Internet will allow Racer determine which devices should be imaged for purposes of ESI production.

Although Racer will issue subpoenas for inspection of Freeman's premises and ESI only if further investigation is necessary after Freeman's deposition, Racer asks this Court to recognize that judicial economy is best served by the issuance of all three subpoenas via a single order that is substantially similar to the attached proposed order. This is because all three subpoenas rest on same set of facts and their issuance is governed by the same legal standard. Three separate motions would

---

[2] For examples of this "open wireless" defense, see, e.g., Mot. to Quash Order Granting Pl.'s Application for Leave to Take Disc. Prior to Rule 26(f) Conference With Extended Joinder Discussion ¶ 5, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-01959 EMC (N.D. Cal. June 7, 2011), ECF No. 12; Aff. in Supp. of Mots. to Dismiss, Mot. to Quash, & General Defenses, at 2, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-01959 EMC (N.D. Cal. June 6, 2011), ECF No. 11; Aff. in Supp. of Mots. to Dismiss, Mot. to Quash, & General Defenses, at 2–3, *First Time Videos, LLC v. Does 1–500*, No. 1:10-cv-06254 (N.D. Ill. Mar. 31, 2011), ECF No. 99.

be unnecessary but for the *ex parte* nature of Racer's request: indeed, under normal circumstances, discovery from third parties is so routine that attorneys can issue Rule 45 subpoenas themselves without burdening the court. The requirement that leave of court should be obtained for the issuance of a Rule 45 subpoena was eliminated in 1946 as "unnecessary and oppressive on both counsel and court." Fed. R. Civ. P. 45 advisory comm. notes (1946 amend.). Racer must nevertheless seek leave of the court to issue the subpoenas it proposes here because it has not yet been able to identify and serve actual defendants and thus, meet and confer with the opposing party.

Additionally, Racer needs the order authorizing it to obtain ESI from Freeman because this would provide Freeman with effective notice of the dispute at hand and thereby impose a corresponding legal obligation upon Freeman to preserve information relevant to the forthcoming subpoena. *See In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) (third party subpoena was sufficient to put an organization under a legal obligation to preserve documents); *see also* Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas, 9 SEDCJ 197, 199 (Fall 2008) ("Third parties may have obligations to preserve evidence relevant to others' litigation . . . once they have notice of the existence of the dispute."). Without an order mentioning all three discovery devices (i.e., including inspection of Freeman's premises and ESI production by Freeman), Racer may suffer irreparable harm. ESI is volatile by nature and susceptible to rapid destruction; network layouts can also be easily altered and router configurations changed. Prolonged delay in obtaining Court authorization for each subpoena may prejudice Racer if Racer cannot gather evidence to prove its claims.

In addition to the risks of unintentional or accidental spoliation, Racer risks *intentional* spoliation of relevant—or even crucial—evidence. Freeman has specifically threatened to destroy his computer so as to impede the litigation of Plaintiff's claims. (*See* Decl. of Brett L. Gibbs ¶ 10, Aug. 30, 2011, ECF No. 14-1.) Absent a court order providing Freeman with effective notice of his obligation to preserve evidence, Plaintiff will be much more likely to suffer irreparable harm from intentional spoliation.

**B.**   **Racer's Proposed Subpoenas Are Reasonably Calculated to Lead to the Discovery of the Infringer's Identity**

Racer seeks to depose Freeman because this is an obvious and cost-effective path to learn the identity of the infringer from Freeman or, at the very least, relevant information that may lead to the eventual discovery of the infringer's identity. During the deposition, Racer intends to elicit facts about Freeman's involvement, if any, with the unauthorized distribution of Racer's videos via Freeman's IP address; to learn about Freeman's computers and network setup; and to identify any other persons who had access to Freeman's computer and network.

Freeman's deposition will guide the course of further discovery. If Freeman indicates he did not engage in distribution of the videos but rather operated an open wireless network accessible by others, then Racer will need to serve Freeman with a subpoena to inspect Freeman's premises. The inspection is the only way Racer may assess Freeman's network under normal operating conditions and identify devices that may have accessed it. Additionally, such inspection will likely reveal the location of a device with a MAC address matching the one distributing the videos as observed by Racer. On the other hand, if during the deposition Freeman were to disclaim any knowledge of the infringing activity or the identities of likely infringers, then Racer would need to serve Freeman with a subpoena for production of ESI from Freeman's computers so that digital forensic technicians may determine who distributed Racer's videos.

All three discovery devices—deposition, inspection, production of ESI—are thus reasonably calculated to lead to the discovery of the infringer's true identity. Furthermore, as explained below, Racer will conduct this discovery in a manner which avoids placing undue burden or expense on Freeman.

**C.**   **Racer's Proposed Subpoenas Do Not Impose Undue Burden or Expense on Freeman**

Racer has a duty to take reasonable steps to avoid imposing undue burden or expense on a person subject to its subpoenas. Fed. R. Civ. Proc. 45(c)(1). The subpoena process that Racer proposes here fully complies with this duty because it seeks limited discovery in the least disruptive

manner possible—that is, discovery through an incremental approach that leaves Racer bearing most of the financial burden of the discovery-related expenses involved.

First, Racer seeks to make it as easy as possible for Freeman to comply with a deposition subpoena. The deposition will take place within 100 miles of Freeman's residence as indicated by the address received from Verizon. Racer will set the date for the deposition at least 30 days in the future from the date of the subpoena to allow Freeman ample time to make arrangements necessary for attendance. Moreover, per Fed. R. Civ. P. 45(b)(1), Racer will even pay Freeman's attendance fees and mileage as allowed by law.

Second, Racer will be using an incremental approach to discovery: Racer will pursue more invasive discovery—inspection of Freeman's premises and production of Freeman's ESI—*only if* it fails to learn infringer's identity through Freeman's deposition. Freeman will also receive additional time to comply with Racer's subsequent subpoenas for inspection and ESI production. To lessen the impact that forensic investigation of Freeman's computers may have on Freeman's daily activities, these computers will be imaged by a qualified provider and returned to Freeman as soon as possible. The technician can then work with the images of the devices rather than depriving Freeman of his equipment for an extended period of time. Information gathered by Racer during the investigation will be used only to aid Racer in enforcing its rights as copyright owner.

Third, Racer will shoulder the financial burden of this discovery request because Racer will cover the majority of the cost of producing and examining the ESI. Although party witnesses must generally bear the burden of discovery costs, nonparty witnesses should not be forced to subsidize an *unreasonable* share of costs arising from litigation to which they are not a party. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982) (emphasis added). Cognizant of the burden that ESI discovery may impose on Freeman as a third party, Racer plans to bear the costs involved in creating and examining images of Freeman's digital devices. Racer will not, however, cover attorney's fees incurred by Freeman to contest discovery requests or costs of duplicative expert examinations; Racer also will not cover the costs involved in restoring otherwise inaccessible ESI if such data was made inaccessible as a result of Freeman's actions in bad faith.

Thus, if Freeman has deleted data or formatted his hard drive after receiving notice of the first Racer subpoena from his ISP, Racer will not cover the increased costs of data recovery.

By contrast, naming Freeman as a defendant without the kind of discovery Racer proposes here would place a much greater burden on Freeman because he would be served with a complaint and forced to file an answer and appear and defend himself in this Court. Fed. R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer . . . within 20 days after being served with the summons and complaint.") Rule 45 instead allows Freeman to move this Court to quash or modify the subpoena without forcing Freeman to litigate the entire case. *Id.* 45(c)(3)(A). As a party, Freeman would also have to answer interrogatories in addition to submitting to a deposition. *Id.* 33. Finally, if Freeman is named as a defendant, he is not entitled to special consideration afforded to third parties. Freeman would have to bear the burden of discovery costs, including the costs of the ESI production. *See Columbia Broadcasting System, Inc.*, 666 F.2d at 672.

Under Racer's proposed discovery process, Freeman will be afforded full notice and opportunity to appear before this Court in order to challenge any undue burdens he believes the subpoenas impose upon him. Freeman will be served with the subpoena personally under Fed. R. Civ. P. 45(b)(1). Freeman may then assert any undue burden, privacy, and privilege objections he may have (as permitted under Fed. R. Civ. P. 45(3)(A)) and then move this Court to modify or quash the subpoena. Freeman could also move this Court for a protective order under Fed. R. Civ. P. 26(c).

Because Racer's request for discovery is reasonable under the circumstances, because it is reasonably calculated to lead to the discovery of infringer's identity, and because Racer will conduct this discovery in a manner that avoids placing undue burden on Freeman, the Court should authorize Racer to depose Freeman, to inspect his premises, and to obtain copies of electronically stored information from his digital devices.

## CONCLUSION

Racer asks this Court to authorize what should be final stage of limited *ex parte* discovery under Rule 45 to determine the true identity of the person who distributed Racer's video without Racer's authorization. Racer seeks this Court's permission to issue three subpoenas directed to

Freeman, the account holder associated with the IP address from which Racer's copyrighted videos were distributed. These subpoenas would enable Racer to depose Freeman, to inspect Freeman's premises, and to obtain ESI from account Freeman's computers. Racer has good cause for taking this discovery prior to a Rule 26(f) conference: there are no parties with whom Racer may confer, Racer has exhausted all other discovery options available to it, further limited discovery from Freeman is the only way Racer can discover the true identity of the person who has infringed its copyright, Racer's proposed subpoenas are reasonably calculated to lead to the discovery of the infringer's identity and Racer intends to execute these subpoenas in a manner that avoids placing undue burden or expense on Freeman.

Now that the Court has had an opportunity to actually review Racer's discovery request, the Court hopefully agrees with Racer that the request is not, as the Court feared, a "fishing expedition." But even if the Court still holds this fear, the Supreme Court has explored this subject and concluded that "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). This Court should therefore let Racer continue with limited *ex parte* discovery and serve its proposed subpoenas on Freeman.


Respectfully Submitted,

                                                  STEELE HANSMEIER PLLC,

**DATED: September 18, 2011**

                                  By:          /s/  Brett L. Gibbs, Esq.

                                       Brett L. Gibbs, Esq. (SBN 251000)
                                       Steele Hansmeier PLLC.
                                       38 Miller Avenue, #263
                                       Mill Valley, CA 94941
                                       blgibbs@wefightpiracy.com
                                       *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 19, 2011, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

John Does
(No Identifying Information Provided)

Lance Freeman
Courtesy copy delivered via U.S. First Class Mail.

/s Brett Gibbs

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE FURTHER EXPEDITED DISCOVERY     No. 11-CV-2329 PSG