Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOY RACER, INC., | No. C-11-02329 PSG |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE** |
| v. | |
| DOE, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

On September 13, 2011, the Court ordered Plaintiff to show cause why the Court should not dismiss its claim against Doe 1 pursuant to Fed. R. Civ. P. 4.[1] (ECF No. 17, hereinafter "September 13 Order") Plaintiff respectfully submits this response in return.

**I.   LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 4(m) requires a court to extend a plaintiff's time for serving the complaint if plaintiff can establish good cause. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). Absent a showing of good cause, Rule 4(m) permits a court to exercise its discretion to

---

[1] The Court "ORDER[ED] Boy Racer to show cause why the court should not dismiss its claim against Doe 1 pursuant to Fed. R. Civ. P. 4. Boy Racer shall appear for oral argument on this issue Tuesday, September 20 at 2:00 p.m." (ECF No. 17.) The Court's Order does not specify Rule 4(m). Considering the very limited time period between the Court's Order and the *sua sponte* hearing it scheduled on September 20, 2011, (i.e. six days), Plaintiff will assume the Court's Order was referring to Rule 4(m).

extend the time for service. Plaintiff can establish good cause and the history of this case weighs strongly in favor of the Court exercising its discretion to extend the time for service.

## II. BACKGROUND

Plaintiff filed its complaint on May 11, 2011, against 52 Doe Defendants. (ECF No. 1.) Because Plaintiff did not know the identities of the Defendants—all of whom operated anonymously under the cover of IP addresses—Plaintiff could not name or serve them with the complaint. (*See Id.*) The very next day, on May 12, 2011, Plaintiff filed its *ex parte* application for leave to seek limited discovery aimed at ascertaining the identities of the Doe Defendants. (ECF No. 6.) Approximately three weeks later, on May 31, 2011, the Court issued an order severing the case against Does 2-52 and granting discovery with respect to Doe 1. (ECF No. 8.) The very next day, on June 1, 2011, Plaintiff issued a subpoena to Verizon Online—the ISP associated with the remaining Doe Defendant ("Verizon"). (Exhibit A.) Pursuant to the Court's Order, Plaintiff was required to allow Verizon seventy days to return Plaintiff's subpoena. (*See* ECF No. 8 [allowing Verizon 30 days to notify its subscriber, allowing the subscriber 30 days to file a motion to quash and allowing 10 days for the return of information following the lapse of the previous deadlines].)

Verizon provided Plaintiff with a subpoena return on or about August 18, 2011. (*See* Declaration of Brett L. Gibbs, Exhibit B [hereinafter "Gibbs Decl."].) On that same day, counsel for Plaintiff issued a letter to the subscriber identified in the subpoena return. (*Id.*) The letter gave a general overview of the case and outlined terms of settlement. (*Id.*) Subscriber avoided communication with Plaintiff's counsel. (*Id.*) On August 26, 2011, Plaintiff's counsel finally reached subscriber. (*Id.*) After conferring with subscriber, Plaintiff's counsel concluded that additional discovery would be necessary to ascertain the infringer's identity. (*Id.*) Plaintiff indicated this necessity in its August 30, 2011 case management conference and awaited the September 8, 2011, case management conference to address the matter with the Court. (ECF No. 14-1 at ¶¶ 3-10.) At the

2
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE        No. C-11-02329 PSG

hearing, the Court expressed its displeasure with the prospect of additional discovery, which it memorialized in its September 13 Order. (ECF No. 17.) Also in the Order was an order to show cause for why this case should not be dismissed under Rule 4(m). (*Id.*)

### III. GOOD CAUSE

"When considering [whether] … to dismiss a complaint for untimely service, courts must determine whether good cause for the delay has been shown on a case by case basis." *In re Sheehan* 253 F.3d at 512. The Ninth Circuit has recognized that, "at a minimum, good cause means excusable neglect." *Id.* (citation omitted). Beyond the "excusable neglect" standard, the Ninth Circuit has articulated three factors (the "*Boudette*" factors) that a plaintiff *may* be required to show in order to bring an "excuse" to the level of good cause, but in its Order to Show Cause the Court did not order Plaintiff to discuss the *Boudette* factors. *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). Nor do the *Boudette* factors appear to have much relevance to a Rule 4(m) good cause analysis where the reason for non-service is that the identity of the defendant has not been ascertained. *See Id.*

In this case, Plaintiff's reason for not serving the Doe Defendant is that the Defendant's identity has not been ascertained. Plaintiff's ignorance of the Doe Defendant's identity is not a result of any delay or dilatory action on Plaintiff's part. To the contrary, at every turn Plaintiff has demonstrated maximum expediency. Of the approximately 130 days that have passed since Plaintiff filed its complaint on May 11, 2011, Plaintiff has spent 114 of the days waiting for the Court to rule on an issue, for the Verizon subpoena to be returned per the Court's order (ECF No. 8), or for the case management conference to occur. Specifically, Plaintiff waited 19 days for the Court to rule on Plaintiff's *ex parte* application, 78 days for Verizon to return Plaintiff's subpoena per the Court's order (*Id.*), 10 days for the case management conference and seven days for the Court to issue its Sept. 13, 2011 order. (*See* Docket.) The 16 days where Plaintiff had an opportunity to act in this case

were spent as follows: 12 days attempting to contact and actually contacting the subscriber in this case; and the balance responding to the Court's order to show cause. (*Id.*) Plaintiff has been diligent.

The "excusable neglect" standard would appear to be readily satisfied. First, as outlined above, Plaintiff has not demonstrated any form of neglect because it has acted as swiftly as humanly possible at every turn. And even if the action of awaiting a decision from the Court or following the Court's subpoena compliance timeline falls within the definition of "neglect", it would certainly be excusable, particularly since: 1) an unknown party cannot possibly be served with a complaint; and 2) the waiting times were within the Court's control, not Plaintiff's.

### IV. DISCRETION

Even if the Court concludes that Plaintiff does not have good cause, it should nevertheless exercise its discretion to extend the time for service. In addition to the foregoing discussion, by refusing to exercise its discretion in Plaintiff's favor the Court will literally foreclose the possibility of any copyright holder ever being able to prosecute Internet-based copyright infringement under the current Federal Rules of Civil Procedure—and this is not hyperbole. The current Federal Rules of Civil Procedure allow for, at best, a crude framework for addressing the very real problem of Internet-based theft. By way of example, Plaintiff would call the Court's attention to the website, Cheggit.net, where as of September 17, 2011, the site offered 7,368,191 separate stolen files, which have collectively been downloaded 78,503,415 times by copyright infringers worldwide. (*See* Exhibit C, Cheggit.net home page screenshot, September 17, 2011.) If the Court wished to do so, it could download for free (albeit illegally) Plaintiff's works and, in all likelihood, get away with it— and Cheggit[2] is a very small player in the realm of digital theft—the Piratebay.org is associated with

---

[2] For the Court's background, Cheggit.net is a semi-private BitTorrent indexing website devoted exclusively to the distribution of adult content. *See* Cheggit, www.cheggit.net (last visited September 17, 2011). Plaintiff would note that shutting down sites like Cheggit is a fruitless exercise because when one indexing site goes down, another quickly steps up to take its place. In fact, Cheggit rose to the top of the adult content piracy world in 2010 when the previous king of

700 times more data than Cheggit. (*See* Exhibit D, Pirate Bay home page screenshot, September 17, 2011.) The timeline for filing a complaint, filing an *ex parte* discovery motion, receiving a ruling on the motion, serving a subpoena, receiving a subpoena response, conferring with the subscriber and then conducting final limited discovery, if necessary, is not realistically compacted into 120 days. (*See*, *e.g.*, Docket.) These factors weigh heavily in favor of the Court exercising its discretion to extend the time for serving the complaint.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court extend Plaintiff's time for service of the complaint.

Respectfully Submitted,

STEELE HANSMEIER PLLC,

**DATED: September 18, 2011**

By:   \_\_\_\_/s/  Brett L. Gibbs, Esq._____

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

---

adult content BitTorrent sites, puretna.com, shut its doors. *See* Torrentfreak, http://torrentfreak.com/nsfw-top-puretna-and-emporium-alternatives-110128/ (last visited September 17, 2011).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 19, 2011, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

John Does
(No Identifying Information Provided)

Lance Freeman
Courtesy copy delivered via U.S. First Class Mail.

                                      /s Brett Gibbs